IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| K. LEE BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-0135-CV-W-ODS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING FINAL DECISION

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his disability application. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff is a 44-year-old male with past work as an administrative support worker, among other jobs.[1] The ALJ found Plaintiff suffered from the following severe impairments: human immunodeficiency virus (HIV), cardiovascular disease, depression, anxiety, personality disorder, and a history of substance abuse. After finding Plaintiff retained the residual functional capacity (RFC) to perform a limited range of light, unskilled work, the ALJ concluded Plaintiff could return to his past work as an administrative support worker or, alternatively, that Plaintiff could perform other work existing in significant numbers in the national economy, precluding a finding of disability.

---

[1] A mental health note from 2006 describes Plaintiff as a transvestite who prefers to be referred to as a female. But during a consultative mental examination in 2008, Plaintiff stated he "'chose [him]self as being a very effeminate male.'" Based on this more recent statement, the Court will refer to Plaintiff as a male.

II. DISCUSSION

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a conclusion. *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered. *Id.* If two inconsistent positions can be drawn from the evidence, and one of those positions represents the ALJ's decision, it will be affirmed. *Id.*

Plaintiff argues the ALJ's decision should be reversed because the ALJ attributed cardiac problems Plaintiff experienced in April 2009 to Plaintiff's medication noncompliance. Plaintiff contends the ALJ should have ordered a consultative examination to facilitate the ALJ in determining whether Plaintiff met Listing 4.02 in 20 C.F.R. § 404, Subpart P, App. 1, applicable to "[c]hronic heart failure while on a regimen of prescribed treatment." The Court disagrees.

First, the ALJ was justified in attributing Plaintiff's cardiac episode to medication noncompliance because Plaintiff's *treating physician* did so. Joshua Stolker, MD, noted he was "[u]nsure [of] the exact etiology of [Plaintiff's] nonischemic cardiomyopathy at this time" but concluded it was "most likely secondary to hypertension versus HIV induced." Dr. Stolker also noted that Plaintiff admitted he had not been taking his medications for "at least 3-4 days prior to [his] beginning of symptoms." Plaintiff's medications included *four prescriptions used to treat hypertension*. Dr. Stolker's impression was that Plaintiff's heart failure exacerbation was "secondary to medication nonadherence."[2] The ALJ was not drawing an improper inference from the record, as

---

[2] Dr. Stolker also wrote that Plaintiff admitted to recent cocaine use and that this "would have played a role in worsening [his] heart failure." The Court notes that, when Plaintiff testified before the ALJ, he made it appear as if the only time he ever used cocaine was in 2007 (2 years before his treatment by Dr. Stolker) when he smoked some marijuana laced with it.

2

Plaintiff argues; he was merely reciting what the record established.³

And the ALJ was not required to order a consultative examination. 20 C.F.R. § 404.1519a(b), titled "[s]ituations requiring a consultative examination," states, "A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim." In arguing a consultative examination was required, Plaintiff points to evidence that (1) during his April 2009 exacerbation of his heart condition, his left ventricular ejection fraction worsened "to 30% from 40% previously," and (2) he experiences chronic shortness of breath when walking up steps or 1/2 a block. But 4.02A1 of the Listing is only satisfied with an ejection fraction of 30% or less "during a period of stability (not during an episode of acute heart failure)," and Dr. Stolker assessed Plaintiff's April 2009 exacerbation as "*[a]cute* on chronic systolic/diastolic congestive heart failure" (emphasis added). And shortness of breath while walking is not enough to meet Listing 4.02. Moreover, that Listing, by its very terms, only applies to "[c]hronic heart failure *while on a regimen of prescribed treatment*" (emphasis added), and Dr. Stolker attributed Plaintiff's April 2009 exacerbation to medication noncompliance. Because the evidence was sufficient to support a decision that Plaintiff did not meet Listing 4.02, no consultative examination was required.

Plaintiff next contends the ALJ's decision is not supported by substantial evidence in the record as a whole because the ALJ erroneously weighed the opinion of a "single decisionmaker" (SDM) as if the SDM was a medical consultant. The Court disagrees reversal is required. An error of this nature is harmless if the ALJ "would inevitably have reached the same result" had he understood the SDM was not a physician. *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007). This is not a case

---

³ Unlike *Pate-Fires v. Astrue*, 564 F.3d 935, 946 (8th Cir. 2009), cited by Plaintiff, there is no indication Plaintiff's medication noncompliance was attributable to his impairments. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) ("Moreover, unlike in *Pate-Fires*, there is little or no evidence expressly linking Wildman's mental limitations to such repeated noncompliance.")

3

where the ALJ gave the SDM significant weight or relied heavily on it in denying benefits. Rather, in mentioning the SDM's opinion that Plaintiff could perform light work, the ALJ appears to have considered it as being on par with all the other evidence that detracted from a finding of disability. This other evidence included proof that Plaintiff's conditions responded well to treatment, that Plaintiff's difficulties were attributable to his failure to follow his prescribed treatment and substance abuse, and that Plaintiff was not credible due to the absence in the medical records of complaints to providers, Plaintiff's ongoing use of marijuana, his daily activities, and his poor employment history. The ALJ would have reached the same result even if he had recognized the SDM was not a physician.[4]

Lastly, Plaintiff argues the ALJ failed to consider the functional demands of Plaintiff's prior duties as an administrative support worker. Plaintiff cites *Groeper v. Sullivan*, 932 F.2d 1234, 1238-39 (8th Cir. 1991), which held that ALJ's must "make explicit findings regarding the actual physical and mental demands of the claimant's past work" and then "compare the claimant's residual functional capacity with the actual demands of the past work to determine whether the claimant is capable of performing the relevant tasks" (citation omitted). But in Plaintiff's case, a vocational expert (VE) testified regarding the skill and exertional requirements of Plaintiff's past work and, based on the ALJ's hypothetical, testified Plaintiff could perform his past work. That distinguishes Plaintiff's case from *Groeper*. *See Walters v. Apfel*, 998 F. Supp. 1078, 1083 (E.D. Mo. 1998) (distinguishing *Groeper* on that basis).

---

[4] Plaintiff also argues the SDM's opinion was entitled to no weight because it was formulated in June 2007, over 2 years before the ALJ issued his decision in 2009. But *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995), cited by Plaintiff, involved an ALJ who discredited a claimant's complaints of fatigue by relying on older progress notes to the exclusion to subsequent evidence that was consistent with the claimant's complaints. Plaintiff does not identify such subsequent evidence supportive of his complaints here. And Plaintiff's Title II application required him to establish he was disabled before March 31, 2007, so evidence from June 2007 was more relevant to that determination than evidence from 2009.

4

## III. CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

                                          /s/ Ortrie D. Smith
                                          ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 6, 2012                UNITED STATES DISTRICT COURT